## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **MARY JOHNSON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:20-00604-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| ***Commissioner of Social Security*,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary Johnson brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 21, 22) and those portions of the certified transcript of the administrative record (Doc. 18) relevant to the issues raised, and with the benefit of oral argument, the Court finds that the Commissioner's final decision is due to be

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

AFFIRMED.[2]

## I.    *Procedural Background*

Johnson filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on February 19, 2019. After they were initially denied, Johnson requested, and on May 29, 2020, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Hearings Operations. On June 9, 2020, the ALJ issued an unfavorable decision on Johnson's applications, finding her not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 18, PageID.91-109).

The Commissioner's decision on Johnson's applications became final when the Appeals Council for the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on November 6, 2020. (*Id.*, PageID.85-89). Johnson subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 25, 26).

irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the

Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court').") ; *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue').") ; *Figuera*

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of

---

*v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate").

law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the

same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national

---

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to

enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Johnson met the applicable DIB insured status requirements through December 31, 2023, and that she had not engaged in substantial gainful activity since the alleged disability onset date of November 27, 2018.[7] (Doc. 18, PageID.96-97). At Step Two,[8] the ALJ determined

---

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age,

that Johnson had the following severe impairments: carpal tunnel syndrome, bilaterally; tarsal tunnel syndrome involving the left lower extremity; neuropathy; type II diabetes; chronic pain syndrome; hernia; hypertension; and morbid obesity. (Doc. 18, PageID.97-98). At Step Three,[9] the ALJ determined that Johnson did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 18, PageID.98-99).

At Step Four,[10] the ALJ determined that Johnson had the residual functional

---

education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine

capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b) and

416.967(b)[11] with the following limitations: occasionally climb stairs and ramps;

---

whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

11 "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting

never climb ladders, ropes, or scaffolds; occasionally stop, kneel, crouch and crawl; frequently handle and finger with the bilateral upper extremity; occasionally use the bilateral lower extremity for pushing, pulling, and pedal operations; occasional exposure to extreme cold; occasional exposure to extreme heat and humidity; occasional exposure to vibrations; occasional exposure to fumes, odors, dust, gas, and poor ventilation; no exposure to hazardous machinery or unprotected heights; maintaining attention, concentration, persistence or pace in two-hour segments of time with customary breaks between segments due to effects of pain and pain medications." (Doc. 18, PageID.99-102).

Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Johnson was unable to perform any past relevant work. (Doc. 18, PageID.103). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as a cashier (approximately 1.8 million jobs) and a sales or cafeteria attendant (approximately 160,000 jobs) that Johnson could perform given her RFC, age, education, and work experience. (*Id.*, PageID.103-104). Thus, the ALJ found

---

factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

that Johnson was not "disabled" under the Social Security Act from the disability onset date through the date of the ALJ's decision.  (*Id.*, PageID.104-105).

## IV.    *Analysis*

Johnson raises a host of issues with the ALJ's decision. Broadly, she claims the ALJ failed to properly consider her neurological impairments throughout the decision. After careful consideration, no reversible error has been shown.

To the extent Johnson argues the ALJ should have found at Step Two that tarsal tunnel syndrome in her right lower extremity was also a severe impairment, any such error is harmless because the ALJ found other severe impairments at Step Two and proceeded to the remaining steps of the sequential evaluation, where the ALJ considered all of Johnson's medically determinable impairments, both severe and non-severe. *See, e.g.*, *Reives v. Kijakazi*, No. CV 1:21-00475-N, 2022 WL 1478983, at *7-8 (S.D. Ala. May 10, 2022) (citing a plethora of Eleventh Circuit authority indicating that failure to find additional severe impairments at Step Two is generally harmless error so long as all medically determinable impairments are considered at the later steps).

In finding that Johnson did not meet a Listing at Step Three, the ALJ stated that she had "given particular consideration to the claimant's physical impairments (see Sections 1.00 et seq., Musculoskeletal System; 4.00 et seq.; Cardiovascular System; 9.00 et seq., Endocrine Disorders)." (Doc. 18, PageID.98-99). Johnson contends that this shows the ALJ did not consider Listing 11.00, covering "neurological disorders," and more specifically Listing 11.14 for peripheral

neuropathy. However, the ALJ did <u>not</u> say that she <u>only</u> considered Listings 1.00, 4.00, and 9.00, to the exclusion of all others. Rather, she stated that she had "given particular consideration" to those Listings, but still determined that Johnson did not meet any "one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1…" (Doc. 18, PageID.98). The ALJ's decision thus sufficiently indicates she considered all Listings, and not just the ones she specifically noted.

Indeed, an ALJ is not required to specify any particular listing at Step Three. While "not[ing] 'that it would be helpful to appellate courts if the ALJ would specifically tie his findings to particular listings that the claimant has argued[,]' " the Eleventh Circuit Court of Appeals has held that "specific findings as to the Listings in Appendix 1 are not required…" *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 842 n.5 (11th Cir. 2019) (per curiam) (unpublished) (alterations added) (quoting *Barron v. Sullivan*, 924 F.2d 227, 230 n.3 (11th Cir. 1991)). "While Appendix 1 must be considered in making a disability determination, it is not required that the [Commissioner] mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). Building on that point, the Eleventh Circuit has held it was "clear that [an] ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that [a claimant] did not meet any of the Appendix 1 impairments[,]" and proceeded to review that

finding for substantial evidence. *Id.*[13] Accordingly, the mere fact the ALJ did not specifically cite Listing 11.14 at Step Three is not conclusive proof that she disregarded that Listing. And Johnson has not attempted to argue how she actually meets Listing 11.14, or that the ALJ's determination that she does not meet that Listing lacks substantial supporting evidence.

Johnson also argues that substantial evidence does not support the ALJ's RFC determination that she can "frequently handle and finger with the bilateral upper extremity" despite her bilateral carpal tunnel syndrome. The undersigned disagrees. Johnson alleged a disability onset date of November 27, 2018. As the ALJ decision notes, records from examinations in September 2018, while diagnosing carpal tunnel syndrome and pain in both upper extremities, documented largely unremarkable to mild findings regarding reflexes, sensations, range of motion, and grip strength. (*See* Doc. 18, PageID.392, 406, 408-409). An October 2, 2018 treatment record noted that an electromyography "was positive for moderate carpal tunnel bilaterally." (*Id.*, PageID.417). A treatment note from the disability onset

---

[13] *See also Bailey*, 782 F. App'x at 842 ("Here, the ALJ identified as a severe impairment Bailey's cirrhosis of the liver with both ascites, which relates to Listing 5.05B, and with hepatic encephalopathy, which relates to Listing 5.05F. The ALJ also explicitly found that Bailey's impairments, individually and in combination, did not meet any listed impairment. The ALJ then proceeded to steps four and five of the sequential analysis. Thus, the ALJ's explicit finding that Bailey's impairments did not meet a listed impairment included implicit findings that Bailey's cirrhosis of the liver with ascites and hepatic encephalopathy did not meet Listing 5.05B or F. Under our precedent, the ALJ was not required to make more explicit findings as to Listing 5.05B and F." (citing *Hutchison*, 787 F.2d at 1463)); *Carstarphen v. Kijakazi*, No. CV 1:20-00506-N, 2022 WL 957552, at *7-10 (S.D. Ala. Mar. 29, 2022) (determining, after surveying and harmonizing at-times conflicting Eleventh Circuit precedent, that detailed findings are generally not required at Step Three).

date noted nothing with regard to carpal tunnel syndrome. (*Id.*, PageID.418).

The first record of upper extremity issues postdating the disability onset date are from a February 14, 2019 examination, at which Johnson's "[d]iscomfort level" was noted to be "4 out of 10" and she reported "having increasing symptoms on the left wrist with swelling in the volar radial aspect…" (*Id.*, PageID.435). The examining physician recommended a wrist splint. (*Id.*). At a March 20, 2019 follow-up examination, it was noted that "[u]pper extremities also give symptoms" but that the "[f]ocus still is on her lower extremities." (*Id.*, PageID.439). The examining physician recommended holding off on any surgery to the upper extremities "based on the slow recovery following surgery to th[e] lower left extremity[,]" while also noting "[s]light improvement." (*Id.*). A little more than two weeks later, on April 5, 2019, Glenton Davis, M.D., performed a consultative examination of Johnson at the request of the SSA. While noting that Johnson's left wrist was in a splint, he documented "[n]o apparent distress" and "[n]ormal dexterity and grip strength" (4/5 strength measured in both upper extremities). (*Id.*, PageID.444). [14] He also diagnosed "carpel tunnel syndrome both wrist left is equal to right." (Doc. 18,

---

[14] Johnson claims Dr. Davis's report is unreliable because his impression of "normal dexterity and grip strength" is inconsistent with the bilateral 4/5 strength measurements recorded. The Court cannot reweigh the evidence or substitute its judgment for the Commissioner's, and given the relatively minor difference between 5/5 strength ("muscle activation against examiner's full resistance, full range of motion") and 4/5 strength ("muscle activation against some resistance, full range of motion), https://www.ncbi.nlm.nih.gov/books/NBK436008/ (last visited Sept. 29, 2022), the undersigned is not persuaded that these findings are inconsistent at all, much less to the extent that they indisputably call the entirety of Dr. Davis's report into doubt.

PageID.444). At a February 20, 2020 examination, Johnson stated that "the pain in her wrist is 'somewhat better.' " (*Id.*, PageID.476). Given the repeated notations of normal to only mildly impaired use of the upper extremities throughout the treatment record, substantial evidence supports the ALJ's determination that Johnson's bilateral carpal tunnel syndrome did not prevent her from frequently handling and fingering with both hands.[15]

Of the record evidence Johnson cites as "[p]ositive or abnormal objective medical evidence" that her upper extremity impairments were more severe than the ALJ found (*see* Doc. 21, PageID.497-498), much of it consists simply of diagnoses and signs indicative of neurological impairment. In other words, "[t]o a large extent, [Johnson] questions the ALJ's RFC determination based solely on the fact that she *has* [carpal tunnel syndrome]. However, the mere existence of th[is] impairment[] does not reveal the extent to which [it]  limit[s] her ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6 (citing *McCruter*, 791 F.2d at 1547 (" 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work")). The fact the ALJ found Johnson's carpal tunnel syndrome to be a "severe impairment" at Step Two meant only that the impairment was not so slight, and its effect not so minimal, that it would clearly not be expected to interfere with Johnson's ability to work. *McDaniel*, 800 F.2d at

---

[15] These records also provide substantial evidence rebutting Johnson's assertion that she experienced greater impairment in her dominant left hand, an issue she asserts the ALJ was required to consider. While true that Johnson was given a splint for her left hand, the treatment notes consistently document similar grip strength, sensation, range of motion, etc., in both upper extremities.

1031. Additionally, the fact that Johnson can point to some portions of the record that cut against the RFC does not convince the undersigned that the ALJ's finding isn't supported by at least substantial evidence. That evidentiary burden, which is "not high," *Biestek*, 139 S. Ct. at 1154, means an ALJ's factual conclusions must be upheld even if the evidence preponderates against them. *Ingram*, 496 F.3d at 1260. See also *Sims*, 706 F. App'x at 604 ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.").[16]

Johnson cites several misstatements of fact in Step Four of the ALJ's decision in her effort to undermine the RFC determination. These misstatements, while unfortunate, are at most harmless errors. The first misstatement Johnson highlights is that Johnson "was diagnosed with bilateral tarsal tunnel syndrome, of the left lower extremity which allegedly causes pain, numbness, tingling, and weakness involving both hands." (Doc. 18, PageID.100). Johnson seizes on this statement as evidence the ALJ "did not understand" Johnson's impairments because (1) the ALJ described her tarsal tunnel syndrome as "bilateral" despite

---

[16] These principles are equally applicable to the handful of other evidentiary citations Johnson perfunctorily cites as undermining various other portions of the RFC. While Johnson complains the ALJ "ignore[d] evidence that undermined her intended finding" (Doc. 21, PageID.499), it is well settled that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision  is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Mitchell*, 771 F.3d at 782 (quotation omitted).

finding only her left-extremity tarsal tunnel syndrome was severe, and (2) tarsals are in the foot and therefore could not have caused pain, numbness, and other symptoms in the "hands." However, considering that statement in context with the rest of the ALJ's decision, the undersigned is not convinced that the noted misstatements amount to more than scrivener's errors, in which some language used to describe Johnson's bilateral <u>carpal</u> tunnel syndrome was accidentally included in a description of her left-sided tarsal tunnel syndrome as well. For instance, following the single sentence Johnson cites, the ALJ goes on to discuss treatment records regarding Johnson's "left lower extremity." (See Doc. 18, PageID.100-101).

The ALJ also noted: "[M]edical records throughout the relevant period are absent of any indication that the claimant failed to recover from the bilateral carpal tunnel surgeries." (Doc. 18, PageID.100). Johnson asserts this statement was erroneous because she "has <u>not had any</u> CTS surgeries." (Doc. 21, PageID.494 (emphasis Johnson's)). The Commissioner agrees that Johnson has not had any such surgeries, but suggests the ALJ may have been relying on Dr. Davis's mistaken notation that Johnson had "[s]urgery on left hand in 2018." (Doc. 18, PageID.443).[17] Regardless, the undersigned agrees with the Commissioner that the misstatement was harmless because the ALJ did not rely solely on these supposed

---

[17] The undersigned rejects Johnson's suggestion that the ALJ was required to discount Dr. Davis's report due to this mistaken notation. Johnson has failed to elaborate on why this mistake of fact regarding her medical history would have any impact on the veracity of Dr. Davis's reported observations from his examination of her.

surgeries in evaluating Johnson's carpal tunnel syndrome, but also considered the relatively mild findings regarding Johnson's ability to use her upper extremities noted throughout the treatment records. As determined above, that was substantial evidence supporting the ALJ's decision.

Johnson next complains that the ALJ "noted the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision" (Doc. 18, PageID.101), asserting that this indicates the ALJ impermissibly drew negative evidentiary inferences from record silence. However, contrary to Johnson's suggestion, the undersigned does not see any indication that the ALJ "held against" Johnson the lack of a medical opinion from an examining source. The ALJ's decision sufficiently indicates she reached her own conclusions about Johnson's condition based on her view of the record as a whole; as part of that task, it was entirely appropriate to observe that her conclusions were not undermined by an opinion from any examining medical source suggesting that greater limitations were warranted.[18]

---

[18] Relatedly, Johnson claims the ALJ was required to support her RFC with the opinion of an examining physician, and erred in not obtaining one. Johnson cites past decisions of this Court that have indeed so stated. *See Dillard v. Astrue*, 834 F. Supp. 2d 1325, 1332 (S.D. Ala. 2011); *Cosey v. Astrue*, No. CA 07-0846-C, 2008 WL 2561585, at *3 (S.D. Ala. June 25, 2008). First, "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709, 131 S. Ct. 2020, 2033 n.7 (2011) (quotation omitted)). *Accord, e.g., Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (per curiam) ("A district court is not bound by another district court's decision, or even

Finally, Johnson claims that the ALJ improperly applied the "three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* A "claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id. See also* 20 C.F.R. §§ 404.1529, 416.929.

However, satisfying the "pain standard" is not itself determinative of disability, nor does it require the Commissioner to accept a claimant's subjective complaints. Rather, the "pain standard" requires that a claimant provide a threshold amount of objective evidentiary support for her subjective testimony

---

an opinion by another judge of the same district court…"). Second, as the undersigned has noted previously, that authority has been largely disavowed by the judges of this district, including by the author of those decisions. *See Williams v. Berryhill*, No. CV 17-00346-N, 2018 WL 3236052, at *6 n.9 (S.D. Ala. July 2, 2018). Third, that authority, which essentially required the ALJ to give controlling weight to at least one medical opinion, is inconsistent with the Commissioner's 2017 revisions to the regulations governing how medical opinions are considered. Those revisions, which are applicable to Johnson's applications because they were filed after March 2, 2017, state that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) …, including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

before the Commissioner is required to consider it. *See Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam) ("The Secretary *must* consider a claimant's subjective testimony of pain *if* she finds evidence of an underlying medical condition, *and* either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." (emphasis added)); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 n.3 (11th Cir. 2011) (per curiam) (unpublished) ("Werner argues that because the ALJ found his conditions could reasonably be expected to cause the pain he described, the ALJ could not discredit the testimony. But Werner incorrectly assumes that meeting the threshold 'pain standard' for considering subjective testimony on pain is the end of the inquiry." (citing *Foote*, 67 F.3d at 1560)). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The ALJ found that Johnson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" (Doc. 18, PageID.102). As the ALJ described generally:

> [M]edical records throughout the relevant period suggest the level of care was low. The clinical records set forth no recurring descriptions of acute or marked symptoms. The clinic notes set forth no expressions of concern by the treating source or a recommendation to restrict activates or suggest the need for intense treatment. Significant musculoskeletal complications have not been identified. And as

reflected in the consultative examining report, the claimant demonstrated normal dexterity and grip strength…

(*Id.*).

More specifically, the ALJ discounted Johnson's claimed inability "to hold any objects due to chronic pain and swelling[,]" noting that "numerous examinations repeatedly document normal grip and strength[, and a]s recently as February 20, 2020, [Johnson] admitted her wrist pain was 'somewhat better[.]' " (*Id.*, PageID.100). The ALJ also noted that Johnson "testified she lives alone and ambulates with a self-prescribed cane but treatment notes as recently as February 27, 2020, indicate the ambulated without any difficulty…" (*Id.*, PageID.101). The ALJ adequately explained her credibility determination, and Johnson largely fails to meaningfully challenge it.[19]

In addressing Johnson's subjective testimony, the ALJ at times noted Johnson's noncompliance with medications, and a failure to seek treatment after March 2019. Johnson argues that this was improper because she lost her insurance after March 2019 and thus had difficulty affording treatment and medications.  It is true that "poverty excuses noncompliance" with a prescribed course of treatment, since to "a poor person, a medicine that he cannot afford to buy does not exist[.]"

---

[19] Johnson complains that the ALJ "listed the Regulatory factors" for credibility determinations but then "never applied them." (Doc. 21, PageID.503). However, a "credibility determination does not need to cite particular phrases or formulations" so long as it is not a broad rejection which is "not enough to enable the district court … to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotations omitted) (alterations added). The ALJ's credibility determination here meets that standard.

*Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quotation omitted). However, where a finding of not disabled "was not significantly based on a finding of noncompliance" and is adequately supported by other considerations, any failure to address a claimant's poverty as a good excuse for noncompliance is harmless. *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam).

To the extent Johnson argues her poverty excuses any failure to produce adequate medical documentation to support her claim, the undersigned is not persuaded. It is well established that "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." *Id.* at 1276. Moreover, Johnson cites nothing in the record that would have informed the ALJ that she was unable to afford her medications or seek medical treatment in general, apart from a passing statement at her hearing that she was unable to afford a particular procedure. (*See* Doc. 18, PageID.147). On the other hand, the Commissioner has cited multiple portions of the record in which Johnson denied financial concerns to her health care providers, including records from after she claims she lost her insurance. (*See id.*, PageID.456, 459, 462, 464, 467, 470, 473, 475, 478). Finally, the ALJ's decision as a whole adequately indicates that Johnson's noncompliance was not a significant basis for finding Johnson not disabled.[20]

---

[20] Any claims of error not expressly addressed above are summarily rejected as insufficiently raised and/or without merit. Additionally, any claims of error raised by Johnson's counsel for the first time at oral argument are forfeited for failure to raise them in her brief without good cause.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Johnson's applications for benefits is due to be **AFFIRMED**.

### V.    *Conclusion & Order*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Johnson's February 19, 2019 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). In light of this disposition, Johnson's "Motion to Expedite" (Doc. 28) is **MOOT**.

A final judgment consistent with this opinion and order shall issue by separate document in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of September 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**